We have challenged various aspects of the nine individual restitution awards in this case, but the overriding problem and the legal issue we want to talk about today is the government's failure to disaggregate the losses caused by the initial abuser from the victim's total losses. As a result of that failure, a mere possessor like Mr. Rothenberg, who played a very minor role in the process, risks becoming liable for the losses of the abuser, the most intervenes the bedrock principle emphasized in Paroline that restitution must reflect the defendant's own conduct, not the conduct of others. And the Ninth and Tenth Circuits have persuasively held that Paroline requires such disaggregation, and we believe the statute does as well. 18 U.S.C. 3664E places the burden on the government to prove the victim's losses as a result of the offense, not the total losses, but the losses as a result of the And that those losses in a possession case are the losses that derive from the ongoing traffic in the images. Those are the only losses that a possessor contributes to, and therefore that's why it has to be the starting point for the apportionment that the district court undertakes. Mr. Adler, how is it possible to disaggregate the harm, the emotional suffering, the effects of it? How can any expert possibly say 72.5% of it was because of the initial exploitation and abuse, and 27.5% of it was because of the continuing existence of it on the Internet? The experts are already quantifying an unquantifiable figure, and we don't think that it's too burdensome to ask them to give a general approximation of the amount of harm that derives from the abuse and the amount of harm that derives from the trafficking, and experts have done this in other cases. I'd refer the court to them. I don't doubt that they'll come up with a number. If you give them enough time and retain them, they'll come up with some estimate, but how does that even pass the last test for Daubert? I mean, how can you possibly know that this victim would not have suffered this percentage of the suffering she's undergoing but for the existence of them on the Internet? In many cases, the victim suffers harm before the images are distributed, and that's a factor that could be taken into account as well. All we can say is that experts have done this in other cases that we know of. The Second Circuit's decision in Minor, M-I-N-E-R, the expert did this in a case last month out of California, a case called Clemens, applying the Ninth Circuit precedent. The experts did this for some of the victims, and they received restitution as a result. The Ninth Circuit says it doesn't have to be a precise mathematical figure. It doesn't have to be an itemized dollar-for-dollar amount. All that we need is a general approximation, which is good enough for restitution, but without even attempting to do that disaggregation, what's happening is that the possessor, someone who possesses one or two images, is going to be held liable, criminally liable as part of his sentence for conduct that an abuser, the most culpable actor, engaged in. And Paroline made clear that it does not want that to happen. It rejected the victim's suggestion for joint and several liability because it emphasized that we're talking about a sentence, a criminal sentence. We're not going to import tort law. We're going to look to it for guidance, but we're not going to import it wholesale. We don't want criminal defendants criminally liable for stuff that they did not do. And so we think that this is something that experts have to at least attempt, and that's why Paroline recognized that complications may arise from this, but that's something that courts can sort out down the road. But in this case and in other cases where the experts are not even attempting that disaggregation process, then we don't even get to the complications. We don't know if experts are having problems at all. We don't think that they will. So the other thing I'd point out is we don't think the statute really leaves any choice because it's the government's burden to prove the losses that are the result of the offense. It does not say that they can calculate total losses and then work backwards from there because that's just an unacceptable risk that defendants are going to be liable for conduct of the abuser. Why can't you estimate total losses to this point and work back and say, well, looking back at how much she suffered, she would have suffered one-third of it because of the internet distribution, but two-thirds of it occurred at the time of the abuse. Why do you have to start at the front and go forward instead of the back and go backwards? If I understood, I think that's exactly what we're proposing, is you can start with the harm from the abuse. So if it's one-third, then you extract that and then you're left with what Paroline calls, it defines this term, general losses on page 449 of the opinion. That is the term that the court uses throughout the opinion, general losses, to refer only to the traffic-based losses. And then from there, we look to the factors to apportion those general losses by the defendant's relative role in causing them. And that's the objective that Paroline set out for courts. We cannot quantify a particular defendant's exact losses that he has caused, so it adopted an aggregate causation theory. It's a less-demanding causation theory that it borrowed from tort law, and it said, okay, we're going to apportion, all the possessors and distributors are contributing to these traffic-based losses. So once you have those general losses, then we're going to ascertain the defendant's relative role, we're going to look at the factors, we're going to see how many images he had, how many other defendants were involved, whether there was distribution, whether there was reproduction of the images, and that's going to be his relative role, but we have to have the right starting point. So... I have a question. Let's just take one victim, for example. Take Jane, and I tried to come up with a chart for images, $100,000. There was evidence of a February 2015 site projecting future therapy cost at $100,000. There was also a letter from the economics group, and there were seven of the defendants ordered to pay, and the district court, throughout all of this, acknowledged this was a possessor. You agree the district court did acknowledge this was a possessor, and he had to treat the possessor different than the distributor, correct? Yes. Okay. So just tell me, on Jane, she's got $101,000 therapy cost, and he awarded only $3,000. Now tell me, let's say it's even de novo review. I'm not sure all of this is. Some issues are de novo, some issues are probably plain error here, but let's forget that. Let's look at, what is that reversible error, given the broad discretion the district court has to give Jane $3,000? Because the $101,000 loss figure that you're referring to is not disaggregated, so the court is working... So, Richard, I'm just trying to understand your argument. So I need to send this back on this $3,000, even though it's four images, and even though she has evidence, because an expert didn't say, out of that $101,000, I attribute this to Mr. X, Mr. Y, and Mr. Rothenberg. Why can't the district court do that? He's looking at the picture, or she, and say, okay, it's $100,000, there's $7,000. I mean, even if I do $7,000 times $3,000, that's only $21,000 for the whole. I mean, how is this abuse of discretion? So you're really making an argument, you have to have expert testimony, taking the $100,000 and dividing it up over speculation, over this defendant, that defendant? No, we're not asking the court to divide up by... Wait a minute. So I've got to have an expert, is what you're saying, number one. We believe that that is how this process has played out, and we believe there's no other way for the government to meet its burden as to the losses. That psych expert, you've got to have, is it an economics expert, a psych expert, or what kind of expert? Well, there are various experts that the victims have employed, some are forensics... I'm not asking them, I'm asking you. We don't think... What type of expert must the government have to meet its burden? I don't know that there's a particular type of expert in every case, but we think that the victim has to undergo psychological evaluation, and then based on that evaluation, there has to be... And you say that has to happen after your client has pled too, I think that's another thing you say. That's a separate argument based on... Which is plain error on that argument, right? We disagree with that, but that's a separate issue. On the disaggregation issue, we believe that we're not asking the... What the government has proposed is, I think, more in line with what Your Honor is suggesting, that you take the total loss figure and divide it by the number... No, I'm not suggesting that. I don't think the government's proposing that. I think you need an individual assessment. You have to look, what is the role? Possessor, distributor. You've got to look at how many images, you've got to see how many other people are paying, you've got to look at all the paroline factors. And I'm just doing this one case, so let's go back. You're saying they have to have an expert. Could the victim say it? In the impact statement, could the victim say, out of that 100 I attribute, I feel like, because he was the fourth one, I think it should be 5,000. Would that be enough? I think that would be at least a starting point. That would be a record-based... No, the answer is yes or no. Is that enough? I think if the... Let's say you reverse. I've got to send it back. I've got to know what the government has to do. What does the government... If the victim came in a victim impact statement and said, I believe that 75% of my harm comes from the traffic and 25% comes from the abuse, that would be evidence in the record that the court could... Would that be sufficient evidence? It would if the court credited that. I think it would be sufficient. Now, the defense could challenge that if it believed that that proportion was wrong. So they'd cross-examine the victim? No, I think they would put in their own expert report and we could have dueling expert reports and the district court would have the discretion to credit one over the other. I think these are the sort of complications... Let's say there was a forensics guy, okay, who's not a psychologist, said, I looked at the psych exam. Here's what I say. That would work too? That would be some sort of evidence, I think. Now, would that be sufficient evidence to get over their burden? And he's disaggregating the losses? I think so. I think that's all we're asking. I think we're not trying to hamstring what the victims or the government, the type of evidence that they can put in. All we're saying, there needs to be some basis in the record to disaggregate the total loss amount so that we're not... And the district court is not able, is not competent, is what you're saying, to look at the four images, the amount of loss, like we do in almost any other damage calculation. I think that's... I mean, it seems like we do this all the time. The district comes in and says, on restitution, I think it's this and that. I think that the problem is that if they're working from the wrong starting point, then they don't even get to the factors. If they don't have... But they're not working. They have the information, seven of the defendants. They have the amount of therapy costs. They have the amount of images. Right. Those go to the Paroline factors, which we are saying come into play only after you have the... You admit he considered the Paroline factors, but he didn't do what? It wasn't really the district court's fault. He did not have the evidence in front of him that he needed to conduct the analysis. Did he consider the Paroline factors? He did consider the Paroline factors, but he did not have the evidence of... Thank you. You've answered my question. Yes. We recognize that the district court had a difficult job here, but we placed the blame primarily on the government, who bears the burden by statute 3664E to present the evidence that the court can then use to consider the Paroline factors. What is the defendant's relative role in contributing to those losses? And had the court had that evidence in front of it, then I think this would be a very different case. And this is exactly the approach that the Ninth and the Tenth Circuits have adopted, and we respectfully ask that the court follow those holdings here. The court has no further questions. Thank you, counsel. May it please the court. I'm Mackenzie Duane on behalf of the United States, and with me at counsel table is Assistant United States Attorney Anita White, who is the prosecutor at the district court level. The district court in this case exercised its considerable discretion in crafting a reasonable restitution order after weighing the permissive factors outlined in Paroline and analyzing the considerable documentation that was submitted in support of the victim's restitution requests. And for these reasons, the district court's opinion should be affirmed on appeal. In Paroline, the Supreme Court was faced with essentially two issues. The first was what the level of causation was that was required in order to award restitution. So for proximate causation, what was required in that regard? And then the second issue that the district court was faced with, which is the issue that the appellants are focusing on today, is how to award restitution, how the district court is supposed to go about once the causation requirement is met, actually coming to an award that reflects the proximate causation and the harm caused by this particular defendant. And what Paroline did here was create a framework. It stated that once the government was able to prove that the defendant had possessed this particular victim's images, and once the government was able to prove that that victim had suffered harm as a result of the trafficking in their images, that the question then became how to weigh these factors, how to go about this balancing test. And these factors account for the disaggregation, or the concept of disaggregation, rather, that appellants are putting forward today. Let me ask you a question. I think there are a couple of things to take into account. One, of course, is this disaggregation, which I understand your point that the Paroline factors to a certain extent engage in disaggregation, I guess, automatically. But another one is, of course, substantive reasonableness. And I think if you just look at the numbers here, they may or may not be substantively reasonable. But here's my concern. When I look at this, I understand, I've read through what the district court did, and I think it had a very difficult task that it had to deal with, and it mentioned a lot of different factors under Paroline. But I don't know how it accounted for each of the factors, so it's hard for me to review what they did, what the district court did, to determine whether it actually sort of gave credit to the idea of focusing on the defendant's particular role. For example, if I look at Jenny, we have a $42,000 reward. But I'm not aware of whether there were total costs that were considered there. There's only one other defendant. That amount of restitution was $7,500 for the other defendant. The government requested $2,000 there. The victim did request $42,600. Somehow the award comes out to $42,000. I can't follow how the district court got there. It may be totally fine how it did it. Because I think when we're talking about abuse of discretion, there are a lot of different ways the district court could have done it, and all of them would have been fine. But I can't tell what the district court did. Can you help me out with that? What did the district court do here? Well, I think what the district court did was weigh the factors in Paroline. And one of those factors, in addition to the cost attributable to certain expenses from the harm, is to consider the number of images. So one of the factors that Paroline lays out is that the courts can consider the number of images. And for Jenny, for example, the defendant actually did submit an amount of restitution, I think in recognition of the fact that the defendant here had 34 images and one video of Jenny. What was the total amount of the victim's damages for Jenny? Well, as you pointed out, the lawyer for Jenny did not put forward a number for total cost because as the letter on behalf of Jenny pointed out, they were still in the process of getting the psychological evaluation completed in her case. But I do think what's important is to step back and look at what the district court had in front of it in this case in totality. What it had was nine victims' submissions, some lengthier than others, but all that dealt with a similar harm. This idea that each of these victims has been harmed as a result of the trafficking in their images and the amounts that have flowed from that particular harm. If you look, for example, at Vicky's submissions, if you look, for example, at this general harm that these victims feel, and while Jenny was at the beginning of this process and so her amounts couldn't be quantified at that point, the district court could look at the totality of the submissions and coming to a reasonable estimate at the end of the day for how much Jenny would suffer going forward. What do you think the district court looked at for the totality of the submissions of how it determined what Jenny's total damages would be? I think that it reviewed all nine as it states in its order. So it did it based on the other victims' damages, you think? I think it looked specifically at Jenny's submissions, which were the letter stating that laying out what the fees had been to date and what they thought the appropriate share was, and then also the victim impact statement, which did speak specifically to the damage that Jenny has felt as a result of her images being trafficked. Jenny had spent $12,500 to get these reports that the defendant wants these victims to get, a forensic, psych, and economics. She had to spend $12,500 to do that, right? Yes. The $12,000 for the psych report . . . Have I got that right? Exactly. The $5,000 for the fees, $100 associated with PACER, and then a $25,000 approximation of . . . So it's actually almost $20,000 of the $42,000 were a cost she'd actually expended out of pocket. At that point, yes. And you've got a video and the 34 images here. And I do think that the video in and of itself really supports a higher restitution amount being granted in this case. And you may well be right about that. I'm not in any way discussing really the substantive reasonableness of the amounts. My concern, as I said, it may be that all of these are substantively reasonable. My concern is I don't know what the district court did to get to the amounts. And so it makes it difficult for me to review. But maybe you can . . . I think what you're telling me is you think the district court just took all of these things and balanced them according to what it thought. And it didn't specify how it was doing it, but it had actually balanced them and taken them into account. Is that what you're saying? Well, yes. And specifically for Jenny, the district court did point out what factors it was considering in reaching this amount after considering her submissions. The fact that only one other criminal defendant had paid restitution to that point. The fact that there were a large number of images in her particular case. And the fact that . . . and taking those things into consideration, the district court reached the amount of $42,600. So I think . . . What about . . . there's one point where, for one of the victims, the district court says, well, there are a lot of other victims here. So that shows that imposing restitution is appropriate here. And then there's one where there are fewer victims, and the district court says, well, there are fewer victims here. So that shows that I should impose a high amount of restitution here. And so it seems like maybe the district court is using the number factor, the number of victims factor . . . I'm sorry, the number of defendants factor as sort of a one-way ratchet. It just goes in one direction. Am I misunderstanding something there? Or do you think that's a problem? Or if you don't think that's a problem, why isn't it? I don't think it's a problem, because I think for the situations where the victims have few payments that have been made to go to their costs, I think the district court is recognizing the burden that has been placed on them, and the fact that so little has gone to contribute, and then holding this defendant accountable accordingly. I do think for the cases like Vicki, like Amy, the cases that have been around longer, what the district court is recognizing is that many other courts have found these amounts reasonable, and for that reason, the district court believes that these amounts are reasonable. So I do think that it goes both ways. He is using the number in different ways, but ways that I think are . . . Well, but here's the thing. So the average restitution ordered for Amy is $3,891, right? But he awards $23,000, and she's got one image, and there are 215 defendants. So I just don't understand if what he was doing was saying, well, all these other courts have ordered this amount. How does he get from $3,891 to $23,000? It might be perfectly appropriate. I mean, it may well be. I just don't know how he got there. So how do I review that? Well, again, I think for Amy, in that case, he weighed the factors in a different way, right? So he didn't put the emphasis on the number of images. Instead, he specifically quoted the victim statement, which is a powerful victim statement about the constant fear that this particular individual feels as a result of knowing that her images are being trafficked. He also pointed in the situation of Amy to the fact that over 200 criminal defendants had paid restitution at that point. And the fact, and again, based on her victim impact statement. There were several psych reports there, and the therapy costs were estimated at over half a million. So you had several psych reports, and I agree, it was a stronger victim impact than some of these others. I don't know whether maybe that's sufficiency of the evidence kind of thing to do it. I think what she's asking, well, he doesn't precisely engage in number. I mean, doesn't say, because I discount 500 divided by 200. Do they have to do that? No, I don't think they have to do that. I guess that's, okay. I'm sorry. That's okay. That's not actually my point. My question is, I think there are a lot of different things he could have done, and he could have used a different method for different victims, depending on, you know, just explaining what it was he did. I just don't know what he did here. That's my concern. And I'm asking you if you can tell me if you know what he did here. I don't think he has to use a specific formula or go through his calculations specifically, but I don't understand how he got to the number. I don't understand why the award is $23,000 when he says, well, lots of other courts have awarded restitution here, so I think it's appropriate, but the average restitution award in the other, by the other courts is $38.91. That's what I'm trying to figure out, and maybe there's something there. I just, I'm not seeing it, so that's why I'm asking for your help. No, and I think that it really goes back to the issue that this isn't supposed to be, after Paroline, it wasn't supposed to be about averages. It wasn't supposed to be about a mathematical formula. It was left to the district court to weigh these factors outlined, as this court did for each victim, to go through the submissions and reach a reasonable conclusion based on those submissions. For Amy, for example, the court went through its analysis. It went through what factors it considered and how it reached this ultimate number. I don't think that Paroline calls for a specific allocation of funds one way or the other, or subtracting as a result of one factor versus the other. I think it is an overall framework for the district court in its discretion to work within, and I think that's what the district court did. So, is it okay then for the district court just to say, these are the Paroline factors. I've considered all of them, and this is my restitution award for each person. I think there certainly has to be analysis, and I think there was analysis here. I think in addition to laying out what the Paroline factors did, which Judge Locke did. I'm sorry, just to be clear, the government's position is that would not be enough? That would not be enough. Okay. There does have to be an analysis made of those factors, and I think what  He went through each of the factors. He went through each of the submissions, and he pointed to the parts that he believed substantiated what he found to be a reasonable amount of restitution for each. Thank you. I think what's important to point out here is that Paroline really, as I discussed, came up with a framework for district courts to work within, to use their sound judgment, to use their discretion, and throughout Paroline, the court makes clear over and over again that what it doesn't want is a rigid formula. What it doesn't want is a strict framework. It doesn't want to take the power out of the district court's hands and put it into this strict algorithm. Instead, it wants the district court to do exactly what the judge did in this case, which is to weigh the various factors and come to a reasonable conclusion. The appellant cite two cases out of the Ninth Circuit and the Tenth Circuit that have imposed the strict disaggregation theory, and I would at the outset say that that disaggregation calculation just simply is not reflected in Paroline, neither in the language. They're simply seizing on a parenthetical that states that the disaggregation may be difficult, but that's something they don't want to deal with at that time. I don't buy those circuits even do a strict one. I'm looking at Dunn. I just read it. He says, look at Dunn, Tenth, look at Galen, Ninth, and so I'm reading them right now. I'm reading Dunn. It was Vickie. Vickie is a series that we've all seen, and the district court in Vickie awarded in the Tenth Circuit $583,955 for two images and said the possessor's role was very minor. All the Tenths said is that's too much. You've got to have a more reasonable evaluation, and you've got to disaggregate, and there the request was for $583,000, the full amount, and that's what the court awarded, so if you read the Tenth. Yes, exactly. In fact, the Tenth says, we recognize that the ultimate decision will be a mix of discretion and estimation. That's what we have here. Yes, and in Dunn, actually, the court even acknowledges that the court in Paroline didn't deal with this disaggregation. It is something that the court, the Tenth Circuit is taking a step further and imposing this disaggregation calculation. That's the Tenth, and then I just read Galen, the Ninth, and I want to make sure these are the ... Have I got the right cases when you come back? Galen and Grovo. That's correct. Yeah. Yeah. Okay. Grover's the Ninth, and they have the same thing, the same problem. There was no effort at all to disaggregate. Yes, and in this case, what the court did was actually at the outside of the order, he states that he's not holding this defendant accountable either for the initial abuse or for the reproduction or distribution of the images and the harms that flowed there from. He is simply holding him accountable for the proximate cause, the harm, as a result of the defendant's possession of these images. That's basically disaggregation. I mean, in my view, disaggregation is finding the proximate harm that this particular defendant is responsible for, right? Yes, exactly. As opposed to charging him for the entire amount of the victim's harm. Yes, exactly, and I do think that what Judge Hall raises is a good point, because in Dunn, what the court had done was actually impose the total amount against that one defendant, so we know in that case that the district court hadn't engaged in any disaggregation. I think for Grovo as well, in that case, the district court had imposed an amount after using the 1 over N method, and it imposed the exact amount after doing that calculation, which of course didn't allow for disaggregation either. I also do think that one point with regards to Grovo and Golan, which is worth pointing out, is that courts have really had a difficulty in actually meeting the standard laid out in those cases, and not in the briefs at this level, actually, these cases weren't cited, but in the defendant's submissions at the district court level, he cited to a case Chan, which was out of the District of Hawaii, and there was a Chase Kluger that was out of the District of Montana, and in both of those cases, the district court is grappling with how to apply this standard that came out after Golan and Grovo, if you interpret it in the sense of the strict disaggregation, and both district courts talk about the monumental difficulty in actually applying that standard, and that they essentially now have to meet this strict disaggregation theory before going forward and actually reaching the Paroline factors, and as a result, both district courts didn't award any restitution, and I don't think that that's in line with what the spirit of Paroline is. What Paroline wanted to do was allow a pathway for restitution for these victims, and if you look at actually Paroline's analysis with regards to the causation, how it reaches the defendant is attempting to reach a causation that is doable, that is meetable, that allows victims to get restitution when they can make these preliminary findings, and in part, that's because the congressional intent behind the statute was to allow for restitution for these particular defendants when these preliminary findings can be made, assuming that the district court does this balancing test, which Judge Locke did at the district court level here. If the court has no further questions, we would ask that you affirm the district court's restitution order. Thank you, counsel. Have I got done right that gave the whole $583,000 to the Vickie victim? The court reversed that award because it was based on joint and several liability, but if you keep reading the opinion, the last two paragraphs say, the defendant also argues that the district court used the wrong starting point because it did not disaggregate the losses and the Tenth Circuit says that's right. On remand, you cannot use a starting point that doesn't disaggregate the harm from the initial abuser. It said that we don't think Paroline expressly resolved that issue, but that's mandated by the clear rationale of the opinion, and we think the Ninth Circuit went even further and said that is actually required by Paroline, and if I could, I'd really like to emphasize three pages of the Paroline opinion where I think it is required. Page 449, the first full paragraph of Part 3 of the opinion. It's not just a parenthetical statement that says complications may arise. It's the sentence that's before and after that parenthetical statement where it defines general losses throughout the entire opinion as the losses that result from the ongoing continuing traffic in the images. Yes, but counsel, all that means is you can't impose the entire loss on that defendant, and you can't impose the entire loss on all the trafficking defendants. You've got to say, all right, I'm not going to consider the losses caused by the initial abuse, which is what the district court did. Your Honor, we respectfully submit that the district court cannot do that just by saying it. It has to have a basis in the record to know. The basis you're talking about is a precise mathematical formula. No, it's not. It's a rough approximation of the amount of harm. How does he get the rough approximation? There has to be evidence that the government submits. What kind of evidence? An expert report from the victim. So, in your position, Paroline requires an expert report in every single case? The statute, along with Paroline. No, no, no. Does Paroline and the statute, or Paroline or the statute, require an expert report in every single case? We don't, yes, because we don't see how else the government... I thought you said earlier that if the victim herself said, half of my suffering has been because of the initial abuse and half of it because of my knowledge that the images are being trafficked. I thought you said that would be enough. But there also has to be a loss calculation. There has to be a loss... No, no. I'm asking you if the victim says that in an affidavit or in testimony and does not present an expert report, is that sufficient for the aggregation requirements that you see in Paroline? I think it very well might be. But of course, there also has to be an expert report that provides the total losses of the victim from which you could then disaggregate. Unless you had, for example, receipts for therapy and things of that nature, you might not need an expert. Sure, that's possible as well. The way that these cases have been working, though, is that the victims have retained experts and they prepare, basically, an expert report that applies... That the victims then submit in all of these cases. They're the same reports that are submitted throughout in every case. So it's not this burdensome process that they have to undergo for every single case. They have these already prepared and all we're asking is for the government to go back and to contact these experts and say, there's one more thing we need you to tell us, which is give us a rough approximation. That's all we're saying. Because the downside, if you don't do that, then you see what we have here. We have substantially above average restitution awards. The Jenny Award, we think, clearly has to be vacated because there's no evidence... Wait, wait, wait, wait. Substantially above what average? The record evidence in this case, the government submitted charts of prior restitution awards and the averages amounts for those victims. And for example, I think the one Judge Rosenbaum was talking about was Amy. The average was $3,800 and in this case... $3,891. Right. And in this case, the victim receives $23,000 even though Mr. Rothenberg possessed a single image of her. I understand. So now the judge has to award a restitution order that reflects the average that other judges have awarded before he makes the award. We think that they have to consider the available evidence in the record. That's what Paroline says. Okay. Here's the deal. Judge says, I considered it. I disagree with those averages. I'm imposing $23,000. That would be a lot better than what happened here where the... I'm not asking whether it would be better. Is that sufficient to pass your standards or not? I think that would be a lot closer to proper... I don't care if it's closer. I'm asking you if that would be adequate. The judge says, I've considered all that. I think those judges are way off the mark. They're wrong. I'm right. I'm imposing more. Yes. I think that would be fine. That would be an exercise of his discretion. But in this case, he's not doing that. Isn't that implicit in him making the award? No. In this case, there's no evidence or no statement in his order to reflect that he's even considered the amount of... There's no... I thought he said, I've considered the factors that Paroline requires me to consider. He went through for each victim various factors in Paroline, but... I thought he said, I've considered the required factors. Am I wrong about that? I don't know if he says... I believe so, but he doesn't... Okay. Then there is evidence that he considered. That's all we require sentencing judges to do. I've considered the 3553A factors, and based on it, here's my sentence. In the Supreme Court, in telling everybody, reassuring everybody that this is not an impossible task, said it's neither unusual nor novel, either in the wider context of criminal sentencing or in the more specific domain of restitution. District courts, by necessity, exercise discretion in fashioning the orders. Here's the deal. We don't require district judges in sentencing to say, now this is the weight I attributed to the criminal history, and this is the weight I attributed to this particular nature of the crime, and this is the weight I attributed to determining whether or not this sentence would deter future crimes. We say, just let us know that you considered the factors, refer to them, and come up with your own reason, judgment, and that's good. We agree, Your Honor, that there's ample room for discretion here when considering the Paroline factors. Our primary argument, though, has to do with the step before those factors, which is the starting point of the analysis that the Paroline uses repeatedly throughout the opinion, and that reflects a disaggregate loss figure that does not... All right, but we're talking about what the judge has to say to satisfy you and us that the judge has considered the Paroline factors. Isn't that what it boils down to? No. And the question, oh, really? No, not in... I'm sorry, Your Honor. He can consider them, but he doesn't have to tell us then? No, no, no. What we're saying is that before you even get to the factors, that there has to be the right starting point, and that is a disaggregated loss figure. No, I thought I understood you to say that disaggregation was one of the factors. No, that's the government's position, and that's what I think the Eighth Circuit has said in its recent decision in Boardman, and we disagree with that. Disaggregation is an inflexible, mandatory requirement before you get to discretion. You have no discretion about disaggregation. That's your position. Yes, Your Honor, that is our position, and that's the position we believe the Ninth and Tenth Circuits have adopted, and that's what we believe Paroline contemplates, and that's what we believe the statute requires in 3664E. So for that reason, we ask that the court vacate the restitution awards in this case, and particularly Jenny, where there's no evidence of loss at all. They just relied on a $25,000 figure from a Senate bill that has nothing to do with Jenny's lawsuit, it has nothing to do with Mr. Rothenberg. So that award, at the very least, we believe cannot stand. Thank you, Your Honor.